DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 2019-0001 |
| | ) |
| JAMES PHILLIP, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**Attorneys:**
**Everard E. Potter, Esq.,**
St. Croix, U.S.V.I.
    *For the United States*

**Kia Danielle Sears, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant James Phillip*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on Defendant James Phillip's ("Defendant") "Motion to Dismiss Indictments" (Dkt. No. 168), the Government's Opposition thereto (Dkt. No. 181), the Government's Supplement to its Opposition (Dkt. No. 185), Defendant's Reply (Dkt. No. 187), and the arguments presented by the parties at the hearing in this matter. For the following reasons, the Court will deny Defendant's Motion to Dismiss.

                                           **I.**        **BACKGROUND**[1]

On October 13, 2020, the Government filed a Superseding Indictment against Defendant charging him with the following offenses: Sex Trafficking of a Minor, in violation of 18 U.S.C.

---

[1] The Court bases the background factual discussion in this section on the established record. The Court provides this information solely for the purpose of the Motion to Dismiss, ever mindful that Defendant is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

§§ 1591(a) and 2 (Count III), and Transportation with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. §§ 2423(a), (e), and 2 (Count IV). (Dkt. No. 117).[2]

On July 6, 2021, Defendant filed the instant Motion to Dismiss, in which he asserts that the Indictment and Superseding Indictment should be dismissed based on the presentation of allegedly perjured testimony to the grand juries. (Dkt. No. 168). Specifically, Defendant argues that the Government tainted the grand jury proceedings by failing to correct allegedly perjurious statements made by Special Agent Christopher McGrath ("Agent McGrath") before the grand juries. *Id*. at 1.

The false statements that Agent McGrath allegedly made to the first grand jury were that: (1) Defendant wanted a younger female so the co-defendant and the complainant told Defendant that the complainant was sixteen; (2) the complainant said that Defendant was wearing a towel and when he took the towel off, he took a cellphone and held it to show her naked body to the camera; (3) Defendant went out to the vehicle to provide money to his co-defendant; (4) Defendant stated that he was wearing a towel when the complainant arrived and took the towel off; and (5) the co-defendant and the complainant got into an argument about the co-defendant getting another girl pregnant. *Id*. at 2. Defendant argues that Agent McGrath fabricated these statements because the testimony cannot be located in any of the exhibits that the Government disclosed to Defendant. *Id*.

The alleged false statements that Agent McGrath made to the second grand jury are similar to those he allegedly made to the first grand jury, and they were that: (1) the complainant said

---

[2] Prior to filing the Superseding Indictment, the Government commenced this action by filing a Criminal Complaint on November 19, 2018. (Dkt. No. 1). The Government also filed an Information, an Amended Information, and an Indictment. (Dkt. Nos. 23, 39, 53). Defendant's co-defendant, Zayvon Acoy, was charged with four counts in the Superseding Indictment. (Dkt. No. 53).

when she arrived at Defendant's house he came out in a towel, talked a few minutes outside, and then she went into Defendant's house; (2) the complainant gave Defendant her phone to videotape her and she did not know if he used Facetime or WhatsApp to videotape her while they had sexual intercourse; (3) Defendant was in a towel when he went outside to meet the complainant and his co-defendant, and Defendant and the complainant then went inside his home; (4) the purpose of the complainant leaving one area of St. Croix for another was for the complainant to have sexual intercourse with Defendant; and (5) the co-defendant sat outside Defendant's home while the complainant was inside. *Id*. at 2-3. Defendant alleges that none of these statements are supported by the discovery that he received. *Id*. at 3.

Defendant also argues that Agent McGrath failed to inform the grand juries that Defendant vehemently denied having sex with the complainant. *Id*. Instead, Agent McGrath testified that Defendant would not tell law enforcement any more after Defendant told them that he had videotaped the complainant naked. *Id*. Further, when asked whether Defendant ever told him that he had sexual intercourse with the complainant, Agent McGrath answered that "he did not say that they had sex." *Id*. Defendant argues that Agent McGrath's testimony "painted a very different picture" of the actual encounter between Defendant and the complainant. *Id*.

Defendant further argues that the Government should have known that Agent McGrath perjured himself because the Assistant United States Attorney assigned to the case had the videotaped statements of Defendant, his co-defendant, and the complainant. *Id*. at 4. Thus, Defendant claims that the Government engaged in prosecutorial misconduct by failing to correct false statements and seeking an indictment knowing that its critical witness perjured himself before the grand juries. *Id*. Specifically, Defendant maintains that the Government had the duty to disclose to the grand juries that neither Defendant nor the complainant stated that Defendant went outside

in a towel to greet her, and that the Government should have disclosed to the grand juries that Defendant vehemently denied having sexual intercourse with the complainant. *Id*. By failing to do so, Defendant argues that the Government usurped the grand jury's role as an independent entity. *Id*.

The Government concedes that there were moments in which Agent McGrath could have spoken with more precision. (Dkt. No. 185 at 3). However, according to the Government, where Agent McGrath's testimony was contrary to the evidence, it was due to failure of recollection, and not because he intended to deceive the grand juries. *Id*. Accordingly, it is the Government's position that Agent McGrath did not perjure himself, and thus no governmental misconduct occurred. *Id*. The Government also argues that any misstatements that Agent McGrath made to the grand juries were harmless, and that Agent McGrath laid out the basic elements necessary for the grand juries to conclude that criminal offenses were committed, and that Defendant probably committed them. (Dkt. Nos. 181 at 5; 185 at 3-4).

## II.   APPLICABLE LEGAL PRINCIPLES

The Fifth Amendment requires that an indictment be returned by a legally constituted and unbiased grand jury. *See Costello v. United States*, 350 U.S. 359, 363 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."). One basis for dismissing an indictment is prosecutorial misconduct in the grand jury proceedings. *See United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979) ("[a]ware of the potential for [government] abuse inherent in grand jury proceedings, this court and others have increasingly exercised our supervisory power over the administration of justice to regulate the manner in which grand jury investigations are conducted," which may include "order[ing] the dismissal of the indictment as a

remedy for prosecutorial misconduct before the grand jury."); *see also United States v. Martino*, 825 F.2d 754, 758-59 (3d Cir. 1987) ("[t]he law is clear, at least in this circuit, that prosecutorial misconduct encompasses at a minimum improper conduct by a prosecutor both at trial, . . . and in connection with grand jury proceedings."). Prosecutorial misconduct includes instances where a prosecutor knowingly submits perjured testimony to the grand jury. *United States v. Fisher*, 692 F. Supp. 495, 501 (E.D. Pa. 1988).

Claims of prosecutorial misconduct due to the presentation of perjured testimony to a grand jury are subject to a harmless error inquiry. *United States v. Soberon*, 929 F.2d 935, 940 (3d Cir. 1991); *see also United States v. Greenspan*, 2016 WL 4402822, at *6 (D.N.J. Aug. 16, 2016); *United States v. Breslin*, 916 F. Supp. 438, 441 (E.D. Pa. 1996). Thus, "there must be a showing of actual prejudice to the defendants." *Breslin*, 916 F. Supp. at 441 (citing *Bank of Nova Scotia*, 487 U.S. 250, 255-56 (1988)); *see also United States v. Van Engel*, 15 F.3d 623, 631-32 (7th Cir. 1993) ("A federal judge is not authorized to punish the misconduct of a prosecutor by letting the defendant walk, unless the misconduct not only violated the defendant's rights but also prejudiced his defense . . . ."); *United States v. Davis*, 2003 WL 1064892, at *1 (E.D. Pa. Mar. 10, 2003) ("[A] harmless error inquiry applies to claims of prosecutorial misconduct before the grand jury.") (citing *Bank of Nova Scotia*, 487 U.S. at 255-56).

When faced with a motion to dismiss an indictment based upon prosecutorial misconduct before the grand jury, the Third Circuit requires a trial court to conduct a two-part inquiry. *See Martino*, 825 F.2d at 759; *Fisher*, 692 F. Supp. at 502. First, the court must determine whether prosecutorial misconduct has actually occurred. *Martino*, 825 F.2d at 759; *Fisher*, 692 F. Supp. at 502. "In order to warrant dismissal of an indictment[,] prosecutorial misconduct must be so flagrant that there was some significant infringement on the grand jury's ability to exercise

5

independent judgment." *Fisher*, 692 F. Supp. at 501 (internal citation and quotation marks omitted). A finding of prosecutorial misconduct requires knowledge on behalf of the prosecutor, or a deliberate act conducted by the government. *See, e.g., United States v. Liciardello*, 93 F. Supp. 3d 365, 368 (E.D. Pa. 2015) ("The Government must know that the testimony at issue is perjured[.]").

In contrast, "[n]egligence and [ ] inadvertent errors" made by the government "do not rise to the level of prosecutorial misconduct warranting dismissal of an indictment." *Fisher*, 692 F. Supp. at 501. Indeed, misstatements or mistakes alone do not warrant the dismissal of an indictment otherwise valid on its face, nor is dismissal appropriate "when there is no evidence of a deliberate attempt by the witness and the prosecutor to mislead." *Id*. Further, mere speculation that prosecutorial misconduct may have occurred in the grand jury is insufficient to justify dismissal of an indictment. *United States v. Dowling*, 2019 WL 1053607, at *4 (D.V.I. Mar. 5, 2019); *United States v. Eisenberg,* 773 F. Supp. 662, 710 (D.N.J. 1991) (denying motion to dismiss indictment "to the extent it is based on speculation" that prosecutorial misconduct occurred before the grand jury).

Second, if misconduct has occurred, the court must consider whether any sanction, such as the dismissal of the indictment, is warranted. *Martino*, 825 F.2d at 759. Dismissal of an indictment is appropriate only when there is a finding of prejudice to the defendant. *Bank of Nova Scotia*, 487 U.S. at 263 (a district court may "not dismiss [an] indictment on the basis of prosecutorial misconduct" before the grand jury without making a factual finding that the defendant was "prejudiced by such misconduct"); *Soberon*, 929 F.2d at 940 ("[T]he presentation of the allegedly perjured testimony to the grand jury" requires "a showing of prejudice," in order to warrant dismissal of the indictment.); *see also Fisher*, 692 F. Supp. at 502 (citing *Martino,* 825 F.2d at 759

(collecting cases)). A finding of prejudice exists only if it is established that the prosecutor's "'violation substantially influenced the grand jury's decision to indict,' or . . . there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Soberon*, 929 F.2d at 939-40 (quoting *Nova Scotia,* 487 U.S. at 256 (quoting *United States v. Mechanik,* 475 U.S. 66, 78 (1986))). The Third Circuit has cautioned that "dismissal of an indictment on the basis of governmental misconduct is an extreme sanction which should be infrequently utilized." *United States v. Birdman*, 602 F.2d 547, 559 (3d Cir. 1979); *see also United States v. Bansal*, 663 F.3d 634, 660 (3d Cir. 2011) (noting that "dismissal of an indictment is the most drastic remedy").

### III.   DISCUSSION

Based on the parties' contentions, there are several issues raised: (1) whether Agent McGrath did, in fact, commit perjury before the grand juries; (2) whether the Government knew or had reason to know that Agent McGrath committed perjury before the grand juries, and the Government failed to inform the grand juries of the known perjury; and (3) assuming that Agent McGrath did perjure himself before the grand juries with the Government's knowledge, whether prejudice against Defendant resulted such that dismissal of the Indictments is warranted. As discussed below, the discrepancies between Agent McGrath's grand jury testimony and the evidence of record are not such that leads the Court to the conclusion that the testimony was either perjurious or reflective of prosecutorial misconduct.[3] In any event, even assuming that perjury and prosecutorial misconduct could be shown, Defendant has failed to show prejudice.

---

[3] Defendant argues that the Court need not find that Agent McGrath committed perjury to find that the Government committed prosecutorial misconduct—only that the Government knowingly presented false testimony to the grand juries. (Dkt. No. 187 at 1-2). However, the Court finds that Third Circuit precedent shows otherwise. *Soberon*, 929 F.2d at 941 (holding that a district court may not dismiss an indictment due to prosecutorial misconduct without first finding that perjury in fact took place).

7

### A. Alleged Perjury

Upon a review of the evidence, the Court concludes that there is support in the record for the most significant aspects of the statements with which Defendant takes issue.

First, Defendant challenges Agent McGrath's testimony that Defendant wanted a younger female and was told that the complainant was sixteen. Both Defendant's and the complainant's interviews reflect that Defendant was informed at the time of the alleged incident that the complainant was sixteen. (Gov. Exhs. 1, 2, 3). While these interviews are devoid of any statement that Defendant specifically told anyone that he "wanted a younger female," they clearly support the testimony that Defendant was told that the complainant was sixteen years old.

Further, Agent McGrath's testimony was that Defendant was wearing a towel and when he took the towel off, he videotaped the complainant's naked body with a cell phone. (Deft. Exh. 4 at 173-74). This testimony is supported in part by Defendant's and the complainant's interviews, which reveal that Defendant allegedly used a cell phone to videotape the complainant's naked body when he was naked himself. (Gov. Exhs. 4, 5). Granted, the record before the Court is devoid of any reference to Defendant wearing a towel during the alleged encounter or at any other time. Instead, Defendant's interview reveals that he was not wearing any clothing throughout his interaction with the complainant. (Gov. Exh. 4). Likewise, the complainant reported that the co-defendant dropped her off at Defendant's home and then video chatted with her while she and Defendant had sex in Defendant's home. *Id*.

Similarly, while there is no evidence which supports Agent McGrath's testimony that Defendant went outside to his co-defendant's vehicle to pay him, the complainant reported that Defendant gave cash directly to the co-defendant and paid him $250.00 "each time." (Gov. Exhs. 1, 6). Further, in the complainant's interview, she stated that the co-defendant had gotten another

girl pregnant, although she did not say that she got into a fight with the co-defendant about this matter, as Agent McGrath testified. (Gov. Exh. 9). The evidence also appears to be silent about Defendant greeting the complainant outside in a towel, talking for a few minutes, and then having the complainant go inside his home. However, there is evidence that Defendant contacted the co-defendant shortly before the co-defendant dropped the complainant off at Defendant's home, and that the co-defendant then video chatted with the complainant while she and Defendant entered Defendant's home and had sex. (Deft. Exh. 1; Gov. Exh. 7).

Similarly, while there is no direct evidence that the co-defendant waited outside of Defendant's home during the encounter, the complainant reported that she was not sure whether the co-defendant stayed or left, but that he dropped her off at Defendant's home, video chatted with her, and picked her up. (Gov. Exh. 13). In addition, while Defendant challenges Agent McGrath's testimony that the complainant went from one area of St. Croix to another to have sexual intercourse with Defendant, the complainant stated that she and the co-defendant lived in Peter's Rest, and that the co-defendant drove her to Defendant's house somewhere in Christiansted for her to have sex with Defendant. (Deft. Exh. 1). Defendant also stated that the complainant came to his home with the co-defendant in a Jeep. (Deft. Exh. 4). Lastly, there is evidence that the complainant used either Facebook messenger or WhatsApp—as opposed to *Facetime* or WhatsApp, as testified by Agent McGrath—to livestream herself with Defendant. (Gov. Exh. 10).

While the Court acknowledges that discrepancies exist between Agent McGrath's testimony and the evidence of record, these discrepancies are not of the nature or magnitude that the Court considers sufficient to constitute material and falsely given testimony, as opposed to misstatements resulting from "mistake, confusion, or faulty memory." *United States v. Hall,* 821 F. App'x 114, 118 (3d Cir. 2020) (a witness commits perjury if he gives false testimony "with the

willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory."). This is particularly so because, as discussed above, there is evidence that supports the essence of Agent McGrath's testimony—namely, that the co-defendant drove the complainant to Defendant's home in order for her to have sexual intercourse with Defendant; that Defendant was told that the complainant was sixteen years of age; that Defendant was involved in videotaping the complainant's naked body; that Defendant was not wearing any clothes throughout his encounter with the complainant; that complainant reported that she had sexual intercourse with Defendant; and Defendant paid his co-defendant money. *Cf. United States v. Kennedy*, 2014 WL 1758136, at *3 (W.D. Pa. May 1, 2014) (even if the defendant's allegations were true that two agents lied to the grand jury by testifying that the defendant's clothing matched that of the suspect, it was still insufficient to dismiss the indictment).

Accordingly, the Court finds that there is insufficient evidence that Agent McGrath committed perjury while before the grand juries—the necessary underpinning to a finding of prosecutorial misconduct—so as to warrant a dismissal of the Indictments. *See Soberon*, 929 F.2d at 941 ("Because we find that the record fails to suggest perjury, we hold that the district court's finding of prosecutorial misconduct based on this imagined perjury is clearly erroneous.")

### B.   Alleged Prosecutorial Misconduct

Even assuming that Agent McGrath committed perjury before the grand juries—a conclusion that the Court deems unwarranted—the Court finds nothing in the record suggesting that the Government knew that Agent McGrath would lie or that he had, in fact, lied before the grand juries. "Indeed, even perjured grant jury testimony does not demand dismissal of the indictment under the district court's supervisory power unless the perjury was 'knowingly and

sponsored by the government." *United States v. Cessa*, 861 F.3d 121, 142 (5th Cir. 2017) (quoting *United States v. Strouse*, 286 F.3d 767, 772 (5th Cir. 2002)).

Thus, to succeed in dismissing an indictment on the basis of prosecutorial misconduct resulting from the government's alleged submission of perjured testimony to the grand jury, "[t]he Government must know that the testimony at issue is perjured." *Liciardello*, 93 F. Supp. 3d at 368 (citing *United States v. Basurto*, 497 F.2d 781, 787 (9th Cir. 1974) (holding that a defendant must not be forced "to stand trial on an indictment which the government *knows* is based partially on perjured testimony") (emphasis added)). The record is devoid of such knowledge on the part of the Government—other than Defendant's attenuated argument that because the exhibits do not fully support the entirety of Agent McGrath's statements to the grand juries, the Government must have known that Agent McGrath was lying. Speculation such as this is insufficient to justify dismissal of an indictment. *See United States v. Dowling*, 2019 WL 1053607, at *4 (denying motion to dismiss indictment due to prosecutorial misconduct when there were, *inter alia*, "only speculative or conclusory statements" regarding whether the Government knew that one of the witnesses they presented before the grand jury was being untruthful). This is especially so where—as discussed above—the essence of Agent McGrath's grand jury testimony is reflected in the record.

Accordingly, because the record does not reflect that the Government knowingly presented perjured testimony through Agent McGrath before the grand juries, there is no basis for dismissing the Indictments. *Fisher*, 692 F. Supp. at 497, 503-505 (denying dismissal of indictment where defendants based claims of prosecutorial misconduct because "[t]here [was] nothing in the record to establish that the prosecutor intended to mislead the grand jury . . . by intentionally and knowingly presenting perjured testimony to the grand jury."); *see also United States v. Sager,* 227

F.3d 1138, 1149 (9th Cir. 2000) (holding that the prosecutor did not violate defendant's due process rights by failing to move to dismiss indictment secured through perjured testimony where the prosecutor was unaware that the witness was lying, as opposed to making a misstatement).

One might argue from the facts that the Government should have been more careful in cross-referencing the evidence with Agent McGrath's testimony, and that its failure to do so was error. However, the Court concludes that, on the record here, the Government's conduct would, at worst, be considered negligent. This is insufficient to constitute prosecutorial misconduct, let alone the kind of flagrant misconduct necessary to warrant dismissal of the Indictments. *See Fisher*, 692 F. Supp at 505; *United States v. Durante*, 2012 WL 6155890, at *4 (D.N.J. Dec. 11, 2012), *aff'd*, 612 F. App'x 129 (3d Cir. 2015) (denying defendants' motion to dismiss superseding indictment because, despite the Government's "sloppiness and failures of communication among Government agents, the [c]ourt finds no basis to characterize these problems as willful or even grossly negligent misconduct."). This is especially so given the Court's finding above regarding the extent to which the essence of Agent McGrath's testimony is reflected in the record, as well as the "rarity with which the remedy [of dismissal] has been employed" for claims of prosecutorial misconduct. *See United States v. Blatt*, 2007 WL 3287397, at *7 (E.D. Pa. Nov. 7, 2007).

Defendant also frames the Government's conduct as "reckless." (Dkt. No. 168 at 11). Along this vein, Defendant argues that the Government also made false statements to the Court at the hearing in this matter. (Dkt. No. 187 at 4). Specifically, Defendant asserts that in an effort to defend Agent McGrath's alleged perjury, the Government repeatedly claimed that it was actually a sheet—rather than a towel—that was worn by Defendant during his interaction with the complainant; that Defendant had just gotten out of the shower before the complainant arrived at

the house; and that the complainant put the phone on a dresser. *Id*. Defendant alleges that none of these statements is supported by the evidence. *Id*.

The Court has not been able to discern in the oral interviews any references to a sheet or towel, or Defendant having gotten out of the shower. There is, however, a reference to the complainant placing her cellphone on a counter—rather than a dresser. (Deft. Exh. 1). Nonetheless, the Court has no reason to believe that the prosecutor's conduct in the grand jury or that any statements at the hearing before this Court were made in bad faith or that constitute a flagrant disregard for Defendant's constitutional rights, as Defendant suggests. *Id*. While the Third Circuit has established that "[w]illful prosecutorial misconduct may be demonstrated through 'a constitutional violation that results from a reckless disregard for a defendant's constitutional rights,' . . . 'the challenged conduct must be shocking, outrageous, and clearly intolerable' and [ ] 'this is an extraordinary defense reserved for only the most egregious circumstances.'" *United States v. House*, 2015 WL 4111457, at *24 (W.D. Pa. July 8, 2015) (emphasis added) (citing *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 255-56 (3d Cir. 2005) and *United States v. Nolan-Cooper*, 155 F.3d 221, 230-31 (3d Cir. 1998)); *Serubo*, 604 F.2d at 817-818 (discussing that abuse of grand jury proceedings that are "entrenched," or "flagrant or persistent" may warrant dismissal of indictment with prejudice). Such conduct clearly is not borne out by the record here.

Accordingly, the Court finds that no prosecutorial misconduct warranting the dismissal of the Indictments occurred here. *Fisher*, 692 F. Supp. at 505 (denying dismissal of indictment due to prosecutorial misconduct because the government's "negligence and [its] inadvertent errors" in front of the first grand jury, "do not rise to the level of prosecutorial misconduct warranting dismissal of an indictment.").

### C. Alleged Prejudice

Finally, the Court "need not reach the issue of prejudice if there has been no misconduct." *Fisher*, 692 F. Supp. at 502. Even assuming, however, that the Court had found that there was indeed prosecutorial misconduct on the part of the Government in putting Agent McGrath on the witness stand during the grand jury proceedings or by not "correcting his testimony"—which it has not found—there is no evidence that the allegedly false testimony "substantially influenced the [grand juries'] decision to indict" or resulted in "grave doubt that the decision to indict was free from the substantial influence of such [a] violation[]." *Soberon*, 929 F.2d at 939-40 (internal citations and quotation marks omitted). Defendant argues that Agent McGrath "painted a different picture" of the encounter through his false testimony. However, as discussed above, the Court finds that there is evidence supporting the essence of Agent McGrath's testimony, and thus any false testimony could not have prejudiced Defendant so as to warrant dismissal of the Indictments.

The Court also rejects Defendant's argument that he was prejudiced because the Government failed to present exculpatory evidence to the grand juries—specifically, Defendant's vehement denials that he had sex with the complainant. Indeed, the Supreme Court in *United States v. Williams* held that a district court may not dismiss an otherwise valid indictment on the ground that the government failed to disclose to grand jury "substantial exculpatory evidence" in its possession. 504 U.S. 36, 51 (1992) ("[R]equiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body."); *see also United States v. Minerd,* 299 F. App'x 110, 112 n.1 (3d Cir. 2008) ("[T]o the extent that [the defendant] alleged that the government failed to present exculpatory evidence to the grand jury, an indictment may not be dismissed on these grounds"); *United States v. Slade*, 2013 WL 3344341, at*3 (E.D. Pa. July 3, 2013) ("District courts are not

authorized to dismiss indictments on the basis that the Government may have failed to provide exculpatory evidence to the grand jury."); *United States v. Jones*, 2012 WL 85424, at *3-4 (E.D. Pa. Jan. 10, 2012) (declining to dismiss indictment and explaining rationale for rule that the Government is under no obligation to present exculpatory evidence to the grand jury); *United States v. Dynkowski*, 720 F. Supp .2d 475, 479 (D. Del. 2010) (rejecting motion to dismiss the indictment on grounds that the Government failed to provide exculpatory evidence to the grand jury).[4]

Defendant clarified at the hearing on this matter that it was the Government's alleged failure to present exculpatory evidence to the grand jury—Defendant's denial of having sex with the complainant—together with the alleged perjury that prejudiced him. However, adding alleged perjury to the already insufficient exculpatory evidence argument does not aid Defendant's cause. As discussed above, an indictment may not be dismissed on the grounds that the Government allegedly failed to present exculpatory evidence to the grand jury. Further, "if sufficient non-perjurious testimony exists to support the indictment, the court will not dismiss the indictment due to the presence of perjured testimony before the grand jury, on the assumption that the grand jury would have returned an indictment without the perjurious evidence." *See United States v. Boyd*, 63 F. App'x 312, 314 (9th Cir. 2003).

Defendant argues that without the allegedly false testimony there is insufficient evidence to charge Defendant with aiding and abetting the offenses of sex trafficking and transporting a

---

[4] The Court notes that in Defendant's Motion to Dismiss, the cases which Defendant cites for the proposition that the government must present exculpatory evidence to the grand jury are cases that were decided prior to the Supreme Court case rejecting such a notion. (Dkt. No. 168 at 11) (citing *States v. Short*, 777 F. Supp. 40 (D.D.C. 1991) and *Ostman v. Eighth Judicial Dist. Court, In & For Cnty. of Clark*, 107 Nev. 563, 565 (1991)).

minor. (Dkt. No. 187 at 4). However, the Court has already found that the essence of Agent McGrath's testimony—namely, that the co-defendant drove the complainant to Defendant's home in order for her to have sexual intercourse with Defendant; that Defendant was told that the complainant was sixteen years old; that Defendant was involved in the videotaping of complainant's naked body; that Defendant was not wearing clothing throughout his encounter with the complainant; that complainant reported that she had sexual intercourse with Defendant; and that Defendant paid his co-defendant money—is supported by the record and is sufficient evidence to support the charges. Indeed, "[i]t is enough that there is *some* competent evidence to sustain the charge issued by the Grand Jury even though other evidence before it is incompetent or irrelevant in an evidentiary sense or even false." *Coppedge v. United States*, 311 F.2d 128, 132 (D.C. Cir. 1962), *cert. denied*, 373 U.S. 946 (1963) (emphasis in original).

Accordingly, the Court finds that Defendant was not prejudiced by any alleged perjury. This provides an additional basis for denying Defendant's request to dismiss the Indictments.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendant has failed to establish that: (1) Agent McGrath committed perjury before the grand juries; (2) assuming Agent McGrath did perjure himself before the grand juries, the Government knew of such perjury and the Government failed to inform the grand juries of such regardless of that knowledge; and (3) assuming that the Government did knowingly fail to inform the grand juries that Agent McGrath perjured himself, that prejudice against the Defendant resulted such that dismissal of the Indictments is warranted. Accordingly the Court will deny Defendant's Motion to Dismiss.[5]

---

[5] The Court rejects the Government's argument that "because the indictment is facially valid," Defendant's arguments that Agent McGrath made "false and unfairly prejudicial statements . . . are impermissible challenges to the accuracy and competency of the information provided to the

An appropriate Order accompanies this Memorandum Opinion.

Dated: November 12, 2021                                  _____/s/_____
                                                          WILMA A. LEWIS
                                                          District Judge

---

grand jury." (Dkt. No. 181 at 5). Indeed, as discussed above, the law clearly gives this Court authority to dismiss an indictment due to false testimony presented to the grand jury under certain circumstances. However, the Court finds that those circumstances do not exist here.