**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | **Criminal No. 2019-0001-02** |
| ) | |
| **JAMES PHILLIP, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**Attorneys:**

**Rhonda Williams-Henry, Esq.**
St. Thomas, U.S.V.I.
    *For the United States*

**Kia Danielle Sears, Esq.**
St. Thomas, U.S.V.I.
    *For Defendant James Phillip*

## MEMORANDUM OPINION

**Lewis, Senior District Judge**

THIS MATTER comes before the Court on Defendant James Phillip's ("Defendant") "Motion to Dismiss" (Dkt. No. 373); Defendant's "Motion for Mr. Phillip's Return to St. Croix" ("Motion for Return") (Dkt. No. 375); and the testimony and oral arguments made by the parties at the February 5, 2026 Competency Hearing. The Court granted in part and denied in part the Government's Motion to Dismiss and Motion for Return by oral Order from the bench at the February 5, 2026 Competency Hearing. This Memorandum Opinion memorializes the Court's ruling.

### I.    BACKGROUND

On February 19, 2019, Defendant was indicted in the above-captioned case. (Dkt. No. 1). Thereafter, on October 13, 2020, the Government filed a Superseding Indictment (Dkt. No. 117),

in which Defendant was charged with one count of Sex Trafficking pursuant to 18 U.S.C. § 1591(a)(2), and one count of Transportation with Intent to Engage in Criminal Sexual Activity under 18 U.S.C. § 2423(a). *Id.* at 2-3. Following a jury trial, Defendant was convicted on both counts in May 2023. (Dkt. No. 314).

On September 8, 2023, Defendant filed an *Ex Parte* Motion requesting that Defendant be evaluated by a psychologist. (Dkt. No. 325). Magistrate Judge Emile A. Henderson III granted that Motion, and Dr. Michele Quiroga ("Dr. Quiroga"), Clinical Neuropsychologist, conducted an evaluation of Defendant. (Dkt. Nos. 326, 332). Dr. Quiroga determined that Defendant had "functional brain impairment [that] poses substantial challenges, rendering him unable to distinguish between greater or lesser legal charges, assist in his defense, or comprehend information provided by legal counsel." *Id.* at 13. Further, Dr. Quiroga advised that "considering his current functional brain capacities, compounded by a dementia syndrome, Mr. Phillip is deemed incompetent to proceed." *Id.* She also found that it was "not foreseeable that [Defendant] will be restored to competency due to his permanent cognitive deficits," but that Defendant did "not meet the criteria for involuntary hospitalization." *Id.* It was determined that Defendant is "a low-functioning individual with cognitive deficits rooted in both biological and neurological factors," with a "Full-Scale IQ of 64." *Id.* at 11-12.[1]

On January 24, 2024, Magistrate Judge Henderson conducted a competency hearing to determine Defendant's ability to proceed, during which the Government did not concede that Defendant was incompetent. (Dkt. No. 334 at 1-2). Instead, the Government made an oral motion for an independent evaluation, which Magistrate Judge Henderson granted. *Id*.

---

[1] Dr. Quiroga's findings are discussed in greater detail in the Report and Recommendation. (Dkt. No. 349 at 5-6).

Pursuant to Magistrate Judge Henderson's Order (Dkt. No. 338), an additional forensic evaluation was then performed by the Government. Dr. Courtney Mills, Licensed Clinical Psychologist conducted the evaluation of Defendant. Dr. Mills concluded that Defendant was not competent to proceed. In her Report, Dr. Mills found that Defendant did not have a "sufficient factual or rational understanding of his legal proceedings against him"; did not demonstrate an ability to consult with counsel in his defense; and that these impairments appear "directly related to his neurodevelopmental and neurocognitive disorders." Dr. Mills further opined that "the prognosis for restoration . . . is poor, given the permanent and degenerative nature of [Defendant's] cognitive impairments."

A second competency hearing was held on August 26, 2024. At that Competency Hearing, the Government did not contest the testimony of Defendant's expert. (Dkt. No. 349 at 5-6). In the R&R, Magistrate Judge Henderson described Dr. Quiroga's testimony regarding the Report she wrote. Defendant was found to have significant learning disabilities, below-average intellectual functioning, a major neurocognitive disorder, and early onset dementia. *Id.* at 6. Dr. Quiroga also testified that as Defendant's brain disease advanced with his age, his ability to understand became severely impaired. *Id.* As such, Defendant was unable to understand the nature of the proceedings against him and could not assist counsel in his defense. *Id.* Additionally, the Magistrate Judge noted that it was Dr. Quiroga's opinion that the condition was "irreversible, permanent, and progressive," and that based on the totality of the evidence, Defendant could not be restored to competency. *Id.* The Government's expert concurred, advising that Defendant was not competent to proceed with sentencing. *Id.*

On August 30, 2024, Magistrate Judge Henderson issued a Report and Recommendation ("R&R"), recommending that the District Court declare Defendant incompetent to proceed and

3

commit him to the custody of the Attorney General for treatment in a suitable facility for a period not to exceed four months, in order to determine whether he could attain competency. (Dkt. No. 349).

On January 2, 2025, the Court entered an Amended Memorandum Opinion and Order. (Dkt. No. 353) in which the Court adopted the findings and recommendations in the Magistrate Judge's August 30, 2024 R&R. (Dkt. No. 353).[2] The Court found that Defendant was "presently suffering from a mental disease or defect rendering him mentally incompetent" and committed Defendant to the Attorney General's custody for hospitalization for a period not greater than four months to determine whether he could regain competency. *Id.* at 6-7.

Beginning on April 24, 2025, Defendant arrived at Metropolitan Correctional Center Chicago ("MCC Chicago") for the evaluation. (Dkt. No. 367). On October 8, 2025, the parties filed a Joint Notice attaching a Report from Dr. Nicole Osborn ("Dr. Osborn"), Forensic Unit Psychologist at MCC Chicago. (Dkt. No. 372). In the Report, Dr. Osborn concludes that "[Defendant] remains incompetent to proceed, and "there is not a substantial probability that he will attain competency to proceed in the foreseeable future." (Dkt. No. 372-2 at 12). Dr. Osborn notes that while Defendant's "factual understanding of the nature and consequences of the legal proceedings had improved," he demonstrated deficits in his ability to retain information. *Id.* at 12. Dr. Osborn explains that Defendant's memory deficits are consistent with neurocognitive and neurodevelopmental disorders constituting mental defects, which preclude him from understanding the proceedings and assisting in his defense. *Id.* Dr. Osborn further states that

---

[2] The Order was amended to (a) correct the citation to 18 U.S.C. § 4241 at page 7 and (b) instruct the United States and Defendant as to the process of ensuring the proper transfer of Defendant to a suitable facility.

4

Defendant was reviewed for potential civil commitment under 18 U.S.C. § 4246,[3] but based on the information available at the time the Report was written, the consultants concluded that Defendant did not meet criteria for civil commitment and further evaluation was not required. *Id.* at 13-14.

On October 16, 2025, Defendant filed a Motion to Dismiss, requesting that the Court "order his immediate release from custody as [he] is incompetent and not likely to regain competency." (Dkt. No. 373 at 1). In his Motion, Defendant asserts that all three psychologists who evaluated him concluded that he is not competent and is presently suffering from a neurocognitive and neurodevelopmental disorder. *Id.* at 2. Therefore, Defendant moves to release him from the custody of the Attorney General and the Bureau of Prisons, and dismiss the instant matter. *Id.* at 1-2.

In its Opposition, the Government agrees that Defendant is not competent, will not regain competency in the future, and should be released on bond. (Dkt. No. 374). However, the Government opposes the dismissal of the charges, arguing that the Court lacks authority to dismiss the case. *Id.*

On November 4, 2025, Defendant filed a Motion for Return to St. Croix, requesting that he be transferred back to St. Croix and immediately released pending resolution of his Motion to Dismiss. (Dkt. No. 375). Similar to the relief requested in his Motion to Dismiss, Defendant seeks dismissal and release from the custody of the Attorney General and the Bureau of Prisons. *Id.* Defendant further represents that the Government does not oppose his request to return to St. Croix and that the parties agree that he be released on bond conditions. *Id.*

---

[3] 18 U.S. Code § 4246 concerns the "hospitalization of a person due for release but suffering from mental disease or defect."

On November 21, 2025, the parties filed a "Notice of Filing Joint Resolution re Defendant's Release" ("Joint Resolution"). (Dkt. No. 377). In their Joint Resolution, the parties agree to the bond amount of $10,000, secured by a $1,000 cash deposit posted by a third-party custodian, John Jackson. (Dkt. No. 14). The parties also state that they agree to the conditions of supervised release set forth in the "Order Setting Conditions of Release." (Dkt. No. 13).

The Court held a final Competency Hearing on February 5, 2026.

## II.    APPLICABLE LEGAL PRINCIPLES

The United States Congress passed a statute that requires defendants to have a competency hearing "at any time . . . prior to the sentencing of the defendant . . . if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The criminal justice system is founded on the notion that "a person whose mental condition is such that [the person] lacks the capacity to understand the nature and the object of the proceedings[,] . . . to consult with counsel, and to assist in preparing [a] defense may not be subjected to a trial." *United States v. Leggett*, 162 F.3d 237, 241 (3d Cir. 1998) (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)) (internal quotes omitted). This concept applies equally for sentencings. *See United States v. Jones*, 336 F.3d 245, 257 (3rd Cir. 2003) (advising that for sentencing the issue that the district court was obligated to determine was "whether there was 'reasonable cause to believe that the defendant may be . . . incompetent.'" (quoting 18 U.S.C. § 4241(a)). To evaluate a defendant's competency, district courts are required to consider certain factors that include "evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial." *Leggett*, 162 F.3d at 242. A court may also consider "an attorney's

representation about his client's competency." *United States v. Renfroe*, 825 F.2d 763, 767 (3d Cir. 1987).

At bottom, as per the statute, when "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General." (Dkt. No. 349 at 9) (quoting 18 U.S.C. § 4247(d)). Indeed, there is a three step process created through 18 U.S.C. § 4241 in the competency assessment: "(1) the district court initially determines whether a defendant is competent to stand trial [or be sentenced]; (2) if found incompetent, the district court commits the defendant to the Attorney General's custody for hospitalization to determine if there is a substantial probability within the foreseeable future the defendant will be competent to stand trial [or be sentenced]; (3) if there is no substantial probability of competence to stand trial [or be sentenced] within the foreseeable future, the Attorney General must find the defendant dangerous or release him back into society." *United States v. Reese*, Crim. A. No. 18-39, 2018 U.S. Dist. LEXIS 172702, at *18 (E.D. Pa. Oct. 5, 2018). "In the Third Circuit, the burden of proving competence rests with the United States." *United States v. Calloway*, 2013 WL 1694803, at *3 (D.N.J. Apr. 18, 2013), *aff'd*, 571 F. App'x 131 (3d Cir. 2014) (citing *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir.1989); *United States v. DiGilio*, 538 F.2d 972, 988 (3d Cir.1976)).

Further, "[i]f, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of Sections 4246 and 4248. 18 U.S.C. § 4241(d)(2). Pursuant to Section 4246, a person may be civilly committed if the district "court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which

7

his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(d); *See United States v. Wazny*, No. 3:21-CR-247, 2022 WL 17363048, at *4 (M.D. Pa. Dec. 1, 2022) ("Even if it is determined that the defendant is likely not going to have his competency restored, he may still be housed and not released if the court determines that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another."). The Government must establish dangerousness under § 4246 by clear and convincing evidence. *Id.* Courts have concluded that 18 U.S.C. § 4246 mandates that if the release of a mentally ill person does not create a substantial risk of danger to others or their property, he is to be freed from the Attorney General's custody. *Reese*, 2018 U.S. Dist. LEXIS 172702, at *18; *United States v. Peppi*, No. 06-cr-157, 2007 WL 674746, at *1 (D.N.J. Feb. 28, 2007) (explaining that if the defendant cannot improve to stand trial and is not a danger to others, he or she is subject to "immediate release or conditional release under a prescribed regimen of treatment).

In addition, in considering whether a defendant should be civilly committed, the Court must assess whether the defendant qualifies as a "sexually dangerous person" under 18 U.S.C. § 4248. A "sexually dangerous person" is someone who "has engaged or attempted to engage in sexually violent conduct or child molestation" and "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." *United States v. Jeffries*, 615 F.3d 909, 911 (8th Cir. 2010). A hearing must be held and the Government must show by clear and convincing evidence that the individual is a "sexually dangerous person." 18 U.S.C. § 4248.

### III. DISCUSSION

#### A. Competency to Proceed to Sentencing

Following the completion of Defendant's four-month evaluation at MCC Chicago, Dr. Osborn concluded that Defendant was not competent to proceed to sentencing and that he was not capable of being restored to competency. At the February 5, 2026 Competency Hearing, the Court considered testimony from Dr. Osborn regarding her report on Defendant's competency, as well as argument by counsel for the Government and Defense. Dr. Osborn and both parties agreed that Defendant is not competent to proceed to sentencing nor is there a substantial probability that the defendant will attain competency to proceed in the foreseeable future.

During her testimony, Dr. Osborn discussed her opinion regarding Defendant's competency to proceed. Dr. Osborn testified that Defendant performed poorly on multiple cognitive assessments, particularly those measuring immediate memory. On two tests, Defendant scored worse than 99 percent of individuals who took the test when they were first developed. Dr. Osborn observed that Defendant was unable to retain information long enough to reason through a hypothetical plea decision and could not use the information to make a determination. Dr. Osborn testified that Defendant does not have a significant brain injury, but suffers from a form of dementia. Dr. Osborn further expressed concern that Defendant displayed deficits in rationally considering his own case, and instead displayed a heavy reliance on his attorney for how he would make decisions in the case. Dr. Osborn said that she agrees with Drs. Quiroga and Mills that Defendant is suffering from cognitive disorders and defects.

Based on the testimony and written report provided by Dr. Osborn, the Psychological Reports provided by Drs. Quiroga and Mills, arguments advanced by counsel for the parties at the February 5, 2026 Hearing, and the entire record, the Court finds by a preponderance of the

evidence that Defendant is presently suffering from a mental defect rendering him unable to assist in his defense and incompetent to proceed to sentencing. The Court further finds by a preponderance of the evidence that there is no substantial probability that Defendant will be restored to competency.

### B. Dangerousness Pursuant to 18 U.S.C. §§ 4246 and 4248

The Court next considered whether Defendant should be civilly committed or released. After hearing arguments from the parties in that regard, the Court found that the Government failed to establish by clear and convincing evidence that Defendant is a danger to the community pursuant to 18 U.S.C. § 4246 or sexually dangerous pursuant to 18 U.S.C. § 4248. Indeed, the Government agreed with the Defense that Defendant was not a danger to the community or sexually dangerous. Further, as agreed by the parties, the Court noted that, following Defendant's arrest in 2018, he was on bond without incident from that time until his conviction in 2023; he was granted permission to travel by the Court during the COVID-19 pandemic; and he incurred no infractions during his hospitalization at MCC Chicago. Overall, the Court found that there was no clear and convincing evidence presented to the Court from which the Court could conclude that Defendant exhibited signs of dangerousness or sexual dangerousness. Accordingly, the Court determined at the Competency Hearing that Defendant must be released from the custody of the Attorney General and the Bureau of Prisons.

### C. Dismissal of the Indictment

Upon inquiry from the Court at the Competency Hearing, Defense counsel clarified that although the parties agree that defendant is not competent to proceed and should be released from custody, Defendant maintains his position that the Indictment should be dismissed. Defense

10

counsel further indicated that Defendant may initiate further proceedings regarding whether he was competent to stand trial and other issues.

With regard to dismissal, the Court finds that it lacks authority to dismiss the Indictment without a Motion from the Government or a showing that defendant's constitutional rights to a speedy trial have been violated. Generally, courts have concluded that it is the Government that retains the discretion to decide whether to dismiss criminal charges in the context of 18 U.S.C. § 4241 proceedings. *See United States v. Magassouba*, 544 F.3d 387, 411 (2d Cir. 2008) ("Certainly, nowhere does [§ 4241] mandate the dismissal remedy that [the defendant] seeks."); *United States v. Acosta-Soberanis*, 2012 WL 4092498, at *6 (N.D. Ga. Aug. 17, 2012), *report and recommendation adopted sub nom. United States v. Soberanis*, No. 1:09-CR-0361-03, 2012 WL 4092491 (N.D. Ga. Sept. 14, 2012) (finding that without a motion from the Government or a showing that defendant's constitutional rights to a speedy trial would be violated, dismissal pursuant to Rule 48 of the Federal Rules of Criminal Procedure is not appropriate); *United States v. Wilson*, 2012 WL 2499506, at *3 (W.D. Mo. June 7, 2012) ("Title 18 U.S.C. § 4241 does not require, and, in fact, does not even address, whether an indictment should be dismissed after a finding of incompetence to stand trial and a conclusion that the defendant will not regain competence in the foreseeable future. Accordingly, at this point, the decision of whether the prosecution should or should not be dismissed is left to the sound discretion of the United States Attorney.").

Accordingly, the Court will deny Defendant's Motion to Dismiss and Motion for Return to the extent that he seeks dismissal of the Indictment.

### D. Release from Custody of the Attorney General

Next, consistent with their Joint Notice of Resolution, the parties agreed that Defendant should be released on the bond that was imposed after his initial appearance. Following a colloquy with the parties and testimony by John Jackson ("Jackson"), the Court ordered a $10,000 secured bond with $1,000 cash posted,[4] and approved Jackson as the third-party custodian. The Court then imposed the existing conditions of release found in the Order Setting Conditions of Release with the following amendments:

- The defendant must submit to supervision by and report for supervision to the U.S. Probation Office;

- The defendant must be restricted to his residence everyday from 7:00 p.m. to 6:00 a.m.; and

- The defendant must seek employment.

Further, the parties agreed, and the Court ordered that Jackson would orally remind Defendant of his conditions of release in consideration of Dr. Osborn's testimony that Defendant can comply when information is provided repeatedly to him.

Although the Court determined that Defendant must be released from the custody of the Attorney General, the Court ordered that Defendant's release be temporarily stayed pending further Order of the Court. Specifically, Defense counsel advised the Court that a suitable residence for Defendant has not yet been located. Because Defendant is cognitively impaired and will be supervised following his release, the Court deemed it necessary to ensure that Defendant has a suitable residence prior to release from custody. The Court directed that Defense counsel shall apprise the Court once Defendant's residence is approved by the United States Probation Office, at which time the stay will be lifted and Defendant can be released pursuant to the bond and

---

[4] The bond was posted at the outset of this matter. (Dkt. No. 13).

12

conditions imposed by the Court.[5] In the meanwhile, the Court ordered that Defendant is to remain on St. Croix pending his release from custody.

### E. Registration as a Sex Offender

During the Competency Hearing, the Court raised the issue as to whether Defendant should register as a sex offender upon release pursuant to the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901 *et seq*. The Government asserted that Defendant should register because Defendant has been convicted of crimes constituting a sex offense. Defendant opposed, arguing that because he has not been sentenced, he has not been "convicted" for purposes of SORNA and requested briefing prior to the Court's determination.[6] While the Court ultimately determined, as discussed below, that based on the plain language of the statute, Defendant would be required to register upon his release, the Court afforded the parties an opportunity to brief the issue and set a briefing schedule for them to do so.

Pursuant to 34 U.S.C. § 20911, the term "sex offender" means an individual who was convicted of a sex offense. Further, sex offense is defined, in relevant part, as a "a criminal offense

---

[5] Defense counsel expects that living arrangements should be made by the end of February. Accordingly, the Court will impose a stay of Defendant's release from custody until March 2, 2026, at which time Defendant is to be released unless the stay is further extended upon application to the Court.

[6] Because the Court raised the issue *sua sponte* at the Competency Hearing, the parties were not prepared to support their respective positions with case authority. However, Defense counsel relied on 34 U.S.C. § 20913(b), which provides guidance on when a sex offender shall initially register. That provision requires initial registration either before completion of a term of imprisonment or, if no term of imprisonment is imposed, no later than three business days after sentencing for the offense. 34 U.S.C. § 20913(b). Defense counsel also relied on the definition of "conviction" under 14 V.I.C. § 1721(c)— which states that an adult sex offender is convicted if the sex offender has been subjected to penal consequences based on a conviction"—arguing that because Defendant has not been sentenced, he has not been "convicted" for purposes of registration under SORNA. The Court disagreed with Defense counsel's interpretation, relying instead on the plain language of the statute as discussed above. Nonetheless, the Court will provide the parties an opportunity to brief the issue.

13

that has an element involving a sexual act or sexual contact with another"; "criminal offense that is a specified offense against a minor"; or "a Federal offense (including an offense prosecuted under section 1152 or 1153 of title 18) under section 1591 . . . 34 U.S.C. § 20911(5)(A)(i)-(iii). Here, Defendant was charged and, following a jury trial, convicted of Count Three – Sex Trafficking of a Minor, in violation of 18 U.S.C. §§ 1591 and (2) Count Four – Transportation [of Minors] with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a). (Dkt. No. 314). Therefore, the Court noted that the plain language of the statute imposes registration obligations based on Defendant's qualifying convictions of Counts Three and Four which are both criminal offenses specified against a minor, and in the case of Count Three, a federal offense including an offense under Section 1591. The Court also found *United States v. Still*, 2021 WL 1914217 at *3 (N.D. Okla. May 12, 2021), to be persuasive in noting that "the plain language of [SORNA] imposes a registration requirement unambiguously on "an individual who *was convicted* of a sex offense." *Still*, 2021 WL 1914217 at *3 ("The statutory language is sweeping, and its plain meaning is that the fact of a sex offense conviction subjects an individual to SORNA's registration requirements until the conviction is vacated.").

Moreover, in response to Defendant's contention that the word "conviction" requires that a sentence had to have been imposed, the Court now considers how the Supreme Court has interpreted the term "conviction" in other federal statutory contexts, making clear that a conviction does not require the imposition of a sentence. *See Deal v. United States,* 508 U.S. 129, 132 (1993) ("In the context of § 924(c)(1), we think it unambiguous that "conviction" refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction. A judgment of conviction includes both the adjudication of guilt and the sentence."); *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112–13 (1983) ("In some circumstances, we have considered

14

a guilty plea alone enough to constitute a "conviction." A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence.").

The Court further finds that 28 CFR § 72.7(2)(i), which provides guidance on how sex offenders must register and keep their registration current and which specifically provides "special rules for certain cases" to be instructive. That Section provides that "[a] sex offender who is released from Federal or military custody, or who is convicted for a Federal or military sex offense but not sentenced to imprisonment, must register within three business days of entering or remaining in a jurisdiction to reside following the release or sentencing." 28 CFR § 72.7(2)(i). Indeed, the regulation contemplates circumstances, albeit rare, in which an individual—like Defendant—has been convicted of a federal sex offense but has not been sentenced to a term of imprisonment. The Court finds 28 CFR § 72.7(2)(i) to be persuasive in demonstrating that a defendant's obligation to register under SORNA is triggered by a conviction rather than the imposition of a sentence.

Accordingly, the Court concluded at the Competency Hearing that, notwithstanding Defendant's incompetency to proceed to sentencing, Defendant is required to register under SORNA, and will impose such requirement as a condition of his release. However, due to the uniqueness of the issue, the Court afforded the parties two weeks to submit simultaneous briefing on the issue, with associated responses.

### IV. CONCLUSION

In view of the foregoing, the Court concurs with Dr. Osborn's professional opinion, as well as the positions of counsel for the Government and Defendant James Phillip, that Defendant is

incompetent to proceed to sentencing and that there is no substantial probability that Defendant will be restored to competency. Based on the Court's findings, the Court will grant in part and deny in part Defendant's "Motion to Dismiss" (Dkt. No. 372) and Motion for Return (Dkt. No. 375) as it did by oral Order at the February 5, 2026 Competency Hearing. The Court will grant the Motion to Dismiss to the extent that the Court finds that Defendant is incompetent to proceed to sentencing; there is no substantial probability that his competency will be restored; and he will be released from the custody of the Attorney General and the Bureau of Prisons. However, based on Defendant's need to locate a suitable residence, the Court will impose a stay of Defendant's release from custody until March 2, 2026, at which time Defendant is to be released unless the stay is further extended upon application to the Court. Further, the Court will deny Defendant's request for dismissal the instant matter.

The Court will grant the Motion for Return to the extent that Defendant will be released, on bond, from the custody of the Attorney General and the Bureau of Prisons and is to remain on St. Croix pending his release from custody. The Court will otherwise deny the Motion for Return.

An appropriate Order accompanies this Memorandum Opinion.

Date: February 16, 2026 _____/s/_____
WILMA A. LEWIS
Senior District Judge

16